# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| AURORA CHICAGO LAKESHORE, HOSPITAL, | )<br>)<br>) Case Nos. 18 C 8162 & 19 C 8132 |
| Plaintiff, | )<br>) Judge Sharon Johnson Coleman |
| v. | )<br>) |
| ALEX M. AZAR II, Secretary of Health and Human Services, et al., | )<br>)<br>) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

Plaintiff Aurora Chicago Lakeshore Hospital ("Aurora") brought several lawsuits against defendants Secretary of the United States Department of Health and Human Services ("HHS"), Alex M. Azar, II, and certain administrators for the Centers for Medicare and Medicaid Services (collectively "CMS") seeking to enjoin defendants from terminating Aurora's Medicare Provider Agreement. The Court presumes familiarity with its rulings in these related cases, including the December 19, 2019 Memorandum Opinion and Order denying Aurora's motion for a preliminary injunction based on the March 2019 Survey and CMS's August 2, 2019 termination letter in case number 19 C 5281. The present ruling resolves the remaining pending motions in the related matters 18 C 8162 and 19 C 8132.

### *Aurora v Azar*, **18 C 8162**

On December 21, 2018, the Court entered a preliminary injunction order as it relates to CMS's December 15, 2018 final termination notice in case number 18 C 8162. CMS admits that it did not brief its regulatory arguments—which were the basis for the Court's December 19, 2019 denial of Aurora's preliminary injunction motion—before the Court entered the preliminary injunction in 18 C 8162. To clarify, despite Aurora's argument to the contrary, CMS is not required

to allow a provider to correct deficiencies under 42 C.F.R. § 488.28 for condition-level noncompliance or if the noncompliance immediately jeopardizes patient health and safety.

Presently before the Court is CMS's motion to vacate the December 21, 2018 preliminary injunction. In support of its motion, not only does CMS argue that it was not required to allow for a plan of correction under § 488.28, but that because Aurora has completed its administrative hearing, Aurora has received sufficient due process, although the Court notes that Aurora may appeal the Administrative Law Judge's ("ALJ") decision to the Departmental Appeals Board under § 498.80. In any event, on November 26, 2019, the ALJ found that Aurora was not in substantial compliance with certain Medicare Conditions of Participation as of November 21, 2018 (November 2018 Survey), including Patient's Rights, 42 C.F.R. § 482.13. The ALJ further concluded that Aurora did not comply with the privacy and safety standard under § 482.13(c) because it did not safeguard its patients to be free from abuse and harassment. Also, the ALJ found that Aurora did not comply with the Condition of Participation under § 482.21, Quality Assessment and Performance Improvement Program. Last, the ALJ concluded that Aurora's condition-level noncompliance with §§ 482.13(c) and 482.21 provided a proper legal basis for CMS to terminate Aurora's Medicare Provider Agreement based on the November 2018 Survey. In discussing Aurora's failure to timely and fully investigate allegations of abuse, the ALJ stated "Aurora had no interest in bettering itself by improving its processes to better protect its patients." In relation to Aurora's patients, the ALJ concluded "[t]hese are some of the most vulnerable people in our society and Aurora has shown it is not up to the task of keeping these children safe."

Based on the ALJ's November 26, 2019 ruling and that CMS is not required to afford Aurora an opportunity to correct its condition-level deficiencies before terminating its Medicare Provider Agreement, the Court, in its discretion, grants CMS's motion to vacate the December 21, 2018 preliminary injunction order. *St. John's United Church of Christ v. City of Chicago*, 502 F.3d 616,

627 (7th Cir. 2007) ("Courts grant injunctive relief with the understanding that there will be an 'opportunity for modifying or vacating [the] injunction when its continuance is no longer warranted.'") (citation omitted).

*Aurora v Azar*, **19 C 8132**

On December 3, 2019, CMS sent Aurora another termination letter based on the Illinois Department of Public Health's November 21, 2019 survey (November 2019 Survey). That survey concluded Aurora was out of compliance in relation to 42 C.F.R. § 482.13, Patient's Rights, among other deficiencies, and that the deficiencies were so serious that they constituted an immediate threat to patient health and safety. On December 12, 2019, Aurora filed this lawsuit seeking to enjoin CMS from terminating its Medicare Provider Agreement, and on December 17, 2019, the Executive Committee reassigned the case to the Court. Before the Court is Aurora's motion for a preliminary injunction.

A plaintiff seeking a preliminary injunction must first establish that he is likely to succeed on the merits, that there is no adequate remedy at law, and that he is likely to suffer irreparable harm absent preliminary relief. *Glossip v. Gross*, ___ U.S. ___, 135 S.Ct. 2726, 2736, 192 L.Ed 761 (2015); *GEFT Outdoors, LLC v. City of Westfield*, 922 F.3d 357, 364 (7th Cir. 2019). "If the plaintiff fails to meet any of these threshold requirements, the court 'must deny the injunction.'" *GEFT Outdoors*, 922 F.3d at 364 (citation omitted). To establish the likelihood of success requirement, a plaintiff must show that the chance of success on his claims is better than negligible. *Valencia v. City of Springfield, Ill.*, 883 F.3d 959, 966 (7th Cir. 2018). However, if the case has no merit, the Court must deny injunctive relief. *GEFT Outdoors*, 922 F.3d at 368.

As with Aurora's earlier motions for preliminary relief, it argues that it is likely to succeed on the merits because CMS's December 3, 2019 termination notice violated its due process rights in that CMS did not allow it a reasonable amount of time to achieve compliance before terminating its

Medicare Provider Agreement. Aurora also contends that the termination notice violates that APA because CMS failed to follow its own regulations. Aurora centers its argument on § 488.28, which allows a provider to submit a plan of correction and gives the provider a reasonable amount of time to achieve compliance.

Relying on the HHS Departmental Appeal Board's decisions interpreting § 488.28, CMS asserts that permitting a provider to submit an acceptable plan of correction under § 488.28 only applies to standard-level deficiencies and not condition-level deficiencies. *See Apollo Behavioral Health Hosp., LLC*, DAB No. 2561, 2014 WL 1757954, at *7 (2014) ("[S]ection 488.28 provides no opportunity to correct condition-level deficiencies."). Indeed, "CMS may not allow a deficient provider the opportunity to correct where [] the deficiencies are condition level, jeopardize patient health and safety, or 'are of such character as to seriously limit the provider's capacity to render adequate care.'" *Dynamic Visions Home Health Servs. v. CMS*, DAB No. CR2414, 2011 WL 3873396, at *3 (2011) (quoting 42 C.F.R. § 488.28(b)). The Court gives substantial deference to the agency's interpretation of its own regulations. *Thomas Jefferson Univ. v. Shalala*, 512 U.S. 504, 512, 114 S.Ct. 2381, 129 L.E.2d 405 (1994); *Abraham Lincoln Mem'l Hosp. v. Sebelius*, 698 F.3d 536, 547 (7th Cir. 2012).

The November 2019 Survey concluded that Aurora was out of compliance with the Condition of Participation, Patient's Rights, 42 C.F.R. § 482.13, along with a finding of immediate jeopardy. In addition, the November 2019 Survey indicates that Aurora was out of compliance with the privacy and safety standard under § 482.13(c), namely, that patients have the right to receive care in a safe setting. Under § 488.705, a condition-level deficiency means noncompliance as set forth in 42 C.F.R. § 488.24(b), namely, "the deficiencies are of such character as to substantially limit the provider's or supplier's capacity to furnish adequate care or which adversely affect the health and safety of patients." The November 2019 Survey concluded that Aurora's noncompliance with the

4

condition of Patient's Rights was so serious that it constituted an immediate threat to patient health and safety, which falls under the definition of condition-level noncompliance. *See Community Hosp. of Long Beach v. CMS*, DAB No. 1938, 2004 WL 2102876, at *4 (2004). Moreover, the November 2019 Survey found that the deficiencies immediately jeopardized patient health and safety, *see* 42 C.F.R. § 488.301, and § 488.28 only applies when deficiencies identified in a survey "neither jeopardize the health and safety of patients nor are of such character as to seriously limit the provider's capacity to render adequate care." 42 C.F.R. § 488.28(b); *see also Rosewood Care Ctr. of Swansea v. Price*, 868 F.3d 605, 615 (7th Cir. 2017) ("The most severe deficiencies are those that present 'immediate jeopardy' to patients.").

Because CMS is not required to provide Aurora with the opportunity to correct its condition-level deficiencies under § 488.28, Aurora's due process and APA claims are without merit. Thus, Aurora has failed to establish the threshold "likelihood of success" requirement for injunctive relief.

**Conclusion**

For the forgoing reasons, the Court, in its discretion, grants defendants' motion to vacate the December 21, 2018 preliminary injunction order in case number 18 C 8162. [64]. Civil case terminated. As to case 19 C 8132, the Court denies plaintiff's motion for a preliminary injunction [5] and denies defendants' motion to dismiss for lack of subject matter jurisdiction as moot. [8, 10]. Civil case terminated.

IT IS SO ORDERED.

Date: 12/19/2019

Entered: _____
SHARON JOHNSON COLEMAN
United States District Court Judge